NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LAWRENCE MENDEZ, JR.,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2017-1236

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00441-CFL, Judge Charles F. Lettow.

---

Decided: May 8, 2017

---

LAWRENCE MENDEZ, JR., Oceanside, CA, pro se.

LAUREN MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before DYK, BRYSON, and CHEN, *Circuit Judges.*

PER CURIAM.

Plaintiff Lawrence Mendez, Jr., proceeding pro se, appeals from the judgment of the United States Court of Federal Claims ("CFC") dismissing his lawsuit. Mr. Mendez brought this suit in order to seek the removal of an adverse personnel decision from his military record and reinstatement to the military. Because Mr. Mendez previously brought a substantially similar suit, which resulted in judgment before the CFC, affirmance by this Court, and denial of certiorari by the Supreme Court, the CFC dismissed this suit on the grounds of *res judicata*. Although we have liberally construed Mr. Mendez's appeal of the CFC's decision, we conclude that this suit is precluded by *res judicata*, and we, therefore, *affirm*.

BACKGROUND

A. Mr. Mendez's Military Service

Mr. Mendez is a former officer of the United States Marine Corps who served in Operation Iraqi Freedom. On July 28, 2007, Mr. Mendez was relieved of his duties as Battalion Adjutant and issued an adverse performance evaluation (the "Adverse Evaluation") for the period of February 1, 2007, through July 28, 2007. Mr. Mendez alleges plausibly that the Adverse Evaluation had a variety of negative effects on his military career, including the issuance and cancellation of various Permanent Change of Station orders, denial on two occasions of promotions to the rank of Captain, and, finally, involuntary separation from the Marine Corps in 2010.

Realizing the potentially harmful effect the Adverse Evaluation would have on his career, Mr. Mendez attempted on repeated occasions to have it excised from his permanent military record, both before the Board for Correction of Naval Records ("Correction Board") and the Marine Corps Performance Evaluation Review Board ("Review Board"). However, his efforts were unsuccessful.

## B.  Prior Litigation

After his dismissal from the Marine Corps, Mr. Mendez filed suit in the CFC seeking reinstatement, back pay, and removal of the Adverse Evaluation from his record. *See Mendez v. United States* (*Mendez I*), 103 Fed. Cl. 370, 374 (2012).  The CFC affirmed the decisions of the Correction Board and Review Board in all respects save one: it found that the Third Officer Sighter ("TOS") in the case— a military ombudsman responsible for reconciling differing factual accounts—had failed to reconcile a certain factual inconsistency.  *Id.* at 383–84.  The CFC remanded to the Correction Board to reconsider Mr. Mendez's application following a review of the inconsistency.  *Id.* at 384.

On remand, the Correction Board referred the Adverse Evaluation to the Review Board for consideration of the inconsistency.  The Review Board concluded that the narrative related to the inconsistency should be struck from the Adverse Evaluation, but that the entire Adverse Evaluation should not be expunged because the inconsistency was "not central to [the] adverse report." *Mendez v. United States* (*Mendez II*)*,* 108 Fed. Cl. 350, 355 (2012). The Correction Board agreed with the Review Board's conclusion and determined that the Adverse Evaluation should be amended as the Review Board had advised. The Correction Board nevertheless concluded that the Adverse Evaluation was still sufficiently negative that a promotion of Mr. Mendez to Captain "would have been definitely unlikely."  *Id.*  Thus, the Correction Board determined that Mr. Mendez was not entitled to the promotion or the other relief he sought.

Mr. Mendez appealed that determination to the CFC, which affirmed because the Correction Board's decision to "exclude any mention of the [inconsistent] issue rather than to remove the fitness report in its entirety was not arbitrary or capricious, contrary to law, or unsupported by substantial evidence."  *Id.* at 356–57.  Mr. Mendez ap-

pealed to this Court, which affirmed, 540 F. App'x 986 (Fed. Cir. 2013) (*Mendez III*), and then petitioned the Supreme Court for a writ of certiorari, which was denied, 134 S. Ct. 1281 (2014).

Having exhausted his appeals, Mr. Mendez moved under Rule 59(a) of the CFC for reconsideration of the 2012 decision upholding the decision of the Correction Board. Because his motion was untimely under Rule 59(a), the CFC deemed it a motion for relief from judgment under Rule 60(b) of the CFC. *Mendez v. United States* (*Mendez IV*), No. 11-160C, 2014 WL 2772590, at *1 (Fed. Cl. June 18, 2014). The CFC court determined that Rule 60(b)(6), which refers to "any other reason that justifies relief," was the only provision that could possibly apply. *Id.* at *4; *see also* U.S. Ct. Fed. Claims R. 60(b). Under the precedent of the CFC and this Court, relief is available under Rule 60(b)(6) only in "extraordinary circumstances." *Infiniti Info. Sols., LLC v. United States*, 93 Fed. Cl. 699, 704 (2010); *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002). Because Mr. Mendez previously had the opportunity to file a timely motion for reconsideration by the CFC, but instead appealed to this Court, the CFC found that he had not "alleged any extenuating circumstances that prevented him from raising these issues earlier" and thus denied his motion for relief. *Mendez IV*, 2014 WL 27772590, at *5. Mr. Mendez then appealed *that* decision of the CFC to this Court, which affirmed, 600 F. App'x 731 (2015) (*Mendez V*). The Supreme Court denied his petition for a writ of certiorari. 136 S. Ct. 62 (2015).

## C. The Instant Case

On April 7, 2016, Mr. Mendez filed a complaint in the CFC, once again seeking to remove the Adverse Evaluation from his military record and to be reinstated to active duty as an officer. The complaint alleged that (1) the military officials who prepared the Adverse Evaluation

acted in an arbitrary and capricious manner in preparing the Adverse Evaluation; (2) the Correction Board acted in an arbitrary and capricious manner by failing to remove the Adverse Evaluation from Mr. Mendez's record and failing to consider Mr. Mendez for promotion; and (3) the CFC and this Court erred in previously ruling against him, which amounted to a "manifest injustice." The CFC dismissed the complaint on the grounds of (1) *res judicata*; and (2) lack of right to file a second motion for relief from judgment. *See Mendez v. United States* (*Mendez VI*), No. 16-441C, 2016 WL 5107085, at *3 (Fed. Cl. Sept. 20, 2016).

Mr. Mendez now appeals the dismissal, and we have jurisdiction over the appeal under 28 U.S.C. § 1295(3).

STANDARD OF REVIEW

We review the CFC's dismissal of a complaint for failure to state a claim upon which relief can be granted *de novo*. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013).

DISCUSSION

A. The Complaint

Counts I–VI of Mr. Mendez's complaint allege arbitrary and capricious behavior by either the military officials involved in the preparation of the Adverse Evaluation or the Correction Board. Counts VII and VIII allege that the CFC and this Court committed a "manifest injustice" by affirming the decisions of the Correction Board. The CFC, in an exercise of lenity toward a pro se litigant, interpreted Counts VII and VIII as a motion for relief from the judgments of the CFC and this Court. *Mendez VI*, 2016 WL 5107085, at *3. We instead view

these counts as attempting to establish that Mr. Mendez's renewed complaint is exempt from *res judicata* under equitable doctrines of "manifest injustice." *See Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001); *see also Pepper v. United States*, 562 U.S. 476, 506–07 (2011); *Arizona v. California*, 460 U.S. 605, 643–44 (1983). In *Intergraph*, we explained the high standard that must be met to overcome *res judicata*:

> Reasons that may warrant departure from the law of the case, thus providing an exception to the more rigorous requirements of *res judicata*, include the *discovery of new and different material evidence* that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect *and its preservation would work a manifest injustice.*

*Intergraph*, 253 F.3d at 698 (emphasis added). Thus, we will view the complaint as alleging that one of these exceptions from *res judicata* may apply, and, for purposes of this appeal, assume as correct the contentions in Mr. Mendez's complaint which may support this allegation. To the extent that Counts VII and VIII seek to appeal from the previous judgments of the CFC and this Court, we note that all paths of appeal have previously been exhausted and the time for filing motions for rehearing or reconsideration has long since passed.

## B. *Res Judicata*

*Res judicata* includes the two related concepts of claim preclusion and issue preclusion, the latter of which is also known as collateral estoppel. *Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1370 (Fed. Cir. 2006). As we have explained,

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has

been litigated and decided. . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

*Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). The CFC decided that Mr. Mendez's claim was barred by claim preclusion. *See Mendez VI*, 2016 WL 5107085, at *3.

The CFC's analysis of claim preclusion is entirely accurate: (1) the parties are identical between this case and the previous cases; (2) two final judgments have issued from the CFC regarding the relief sought in this case; and (3) this case and the previous cases are based on the same set of transactional facts: the creation of the Adverse Evaluation and the subsequent determinations of the Correction Board. *See Mendez VI*, 2016 WL 510785, at *3. Thus, Mr. Mendez's claim is barred by claim preclusion. *See Sharp*, 448 F.3d at 1370 (describing the three requirements for claim preclusion).

Mr. Mendez's claim is also barred by issue preclusion. This matter has already been "litigated and decided." The operative allegations in the instant complaint seek to overturn decisions of military officials and of the Correction Board under an arbitrary and capricious standard. But this is exactly what was sought in *Mendez II*:

Plaintiff challenges the decision rendered by a correction board. The court reviews such decisions under a deferential standard so as not to "disturb the decision of the [correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."

108 Fed. Cl. at 356 (quoting *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010)) (alteration in original). Thus, issue preclusion bars the "relitigation" of this

"matter that has been litigated and decided."  *Sharp*, 448 F.3d at 1370.

### C.   Equitable Exceptions to *Res Judicata*

We now turn to whether Mr. Mendez has shown in his briefing that an equitable exception to *res judicata* applies.  Mr. Mendez alleges certain facts that, in his view, warrant another opportunity for him to seek the relief he sought in his prior litigation.  For example, Mr. Mendez contends that the TOS involved in the creation of the Adverse Evaluation was relieved of his Afghanistan command and dismissed from military service in 2013.  But the dismissal of the TOS six years after the issuance of the Adverse Evaluation on a ground unrelated to the facts of this case bears no relevance to how the TOS conducted himself as to Mr. Mendez's Adverse Evaluation.  This allegation is therefore immaterial to the merits of Mr. Mendez's complaint.

Mr. Mendez also alleges that his superior officer threatened him with physical harm.  This allegation, however, is not "new and material evidence" because, at a minimum, it is not newly discovered.  Thus it could have been offered to show arbitrary and capricious behavior by defendants in the prior litigation.

Finally, Mr. Mendez alleges he was mentally and emotionally impaired due to "abusive circumstances" suffered circa 2007, which the Department of Veteran Affairs recognized in September 2016.  As with the alleged physical threats made against Mr. Mendez, Mr. Mendez's mental impairment, along with any abuse directed toward him, was an already existing circumstance at the time of the previous litigation and could

have been offered to show arbitrary and capricious behavior by the defendants.[1]

Having found that the additional facts presented by Mr. Mendez are not grounds for an exception to *res judicata*, we also note that we are aware of no other facts which would support an exception to *res judicata* in this case. We are aware of no "new and different material evidence that was not presented in the prior action." *Intergraph*, 253 F.3d are 698. We are likewise not aware of any "intervening change of controlling legal authority." *Id.* And on the record before us, we hold that the prior decisions (i.e., *Mendez I–VI*) are not clearly incorrect, and that their preservation will not work a manifest injustice. *Id.* Thus, Mr. Mendez's claims in this suit are subject to *res judicata.*

## CONCLUSION

For the foregoing reasons, the Court of Federal Claim's entry of judgment is *affirmed.*

## COSTS

No Costs.

---

[1] We offer no opinion as to whether Mr. Mendez may have any other claim against any entity or person based on the abuse he allegedly suffered. We note only that these circumstances could have been offered as evidence in his previous suit seeking to set aside the Adverse Evaluation.